**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| ALBERT LANG, | : | **Hon. Jose L. Linares** |
| | : | |
| Petitioner, | : | Civil No. 05-2425 (JLL) |
| | : | |
| v. | : | |
| | : | |
| RONALD CATHEL, et al., | : | **O P I N I O N** |
| | : | |
| Respondents. | : | |
| | : | |

**APPEARANCES:**

> ALBERT LANG, #260093B
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey  08625
> Petitioner pro se

> ZULIMA V. FARBER, ATTORNEY GENERAL OF NEW JERSEY
> ROBERT E. BONPIETRO, DEPUTY ATTORNEY GENERAL
> Div. of Criminal Justice - Appellate Bureau
> P.O. Box 086
> Trenton, New Jersey  08625
> Attorneys for Respondents

**LINARES**, District Judge

Albert Lang filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a judgment of conviction in the Superior Court of New Jersey.  Respondents filed an Answer, with relevant portions of the state court record, arguing that the Petition should be dismissed on the merits or as a mixed petition.  For the reasons expressed below, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

# I.  BACKGROUND

Petitioner challenges a judgment of conviction entered on March 16, 1998, in the

Superior Court of New Jersey, Law Division, Middlesex County, after a jury convicted him of

the purposeful and knowing murder of Leslie Lee on July 21, 1995, and possession of a weapon

(a concrete block) for an unlawful purpose.  In Petitioner's confession, which was admitted into

evidence over objection, Petitioner states that he had sexual relations with the victim, who was a

prostitute, and that an altercation ensued regarding payment.  Specifically, Petitioner answered

the following questions regarding the crime:

Q        Okay and then after that what happened, did you then pay her?

A        Then I brought my money to give it to her.

Q        And what happened.

A        And she tried to grab everything from me.

Q        How much money did you have?

A        I had eighty dollars.

Q.       All right.

A.       And she tried to grab the whole eighty and I said what are you doing, what
         are you doing, and then I tried to give her twenty and she tried to grab it
         from me and I tried to run out of there and she grabbed my feet and she's
         saying I'm gonna kill you, I'm gonna kill you and, and that's when it
         happened, I hit her with the rock.

Q.       All right what kind of rock was it?

A.       A brick.

Q.       All right and how many times did you hit her?

A.       I think twice or three times.

2

Q.      And what part of her body?

A.      I guess her head.

Q.      All right, what did you do with the brick after you hit her?

A.      I threw it and I just left.

(Transcribed Statement of Albert Lang, dated July 21, 1995, 9-4 to 10-2.)

The Law Division sentenced Petitioner to a term of life imprisonment with a 30-year period of parole ineligibility.  Petitioner appealed, and in an opinion filed October 24, 2000, the Appellate Division of the Superior Court of New Jersey affirmed.  State v. Lang, No. A-5446-97T4 slip op. (Super. Ct. of N.J., App. Div., Oct. 24, 2000).  On February 15, 2001, the Supreme Court of New Jersey denied certification.  State v. Lang, 167 N.J. 630 (2001) (table).

On August 7, 2001, Petitioner executed a pro se petition for post conviction relief.  The Law Division denied post conviction relief without an evidentiary hearing by order filed October 15, 2002.  Petitioner appealed, and in an opinion filed October 21, 2004, the Appellate Division affirmed the order denying post conviction relief.  State v. Lang, Docket No. A-2045-02T4 (Super. Ct. of N.J., App. Div., Oct. 21, 2004).  On January 19, 2005, the New Jersey Supreme Court denied certification.  State v. Lang, 182 N.J. 428 (2005) (table).

Petitioner executed the § 2254 Petition which is now before the Court on March 27, 2005.  The Clerk received it on September May 6, 2005.  The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  The Petition presents six grounds:

3

Ground One:  THE TRIAL COURT ERRONEOUSLY
INSTRUCTED THE JURY ON IMPERFECT SELF-DEFENSE
AND INTOXICATION AND FAILURE TO EXPLAIN THE
LAW WITH [RESPECT] TO THE FACTS OF THE CASE,
THEREBY DENYING DEFENDANT  HIS RIGHT TO A FAIR
TRIAL.

      A.     THE JURY INSTRUCTIONS IN IMPERFECT
             SELF-DEFENSE AND  PASSION-
             PROVOCATION MANSLAUGHTER WERE
             INADEQUATE.

      B.     THE TRIAL COURT'S INSTRUCTION ON INTOXICATION
             WAS ERRONEOUS.

Ground Two:  BY CALLING THE VICTIM'S SISTER TO GIVE
IRRELEVANT AND HIGHLY PREJUDICIAL TESTIMONY,
THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT
AND DEPRIVED PETITIONER OF HIS RIGHT TO A FAIR
TRIAL.  U.S. Const. Amend. XIV.

Ground Three:  PETITIONER'S STATEMENT MUST BE
SUPPRESSED BECAUSE THEY WERE OBTAINED IN
VIOLATION OF HIS RIGHTS AGAINST SELF-
INCRIMINATION AND TO DUE PROCESS OF LAW.  U.S.
Const. amend. V, XIV.

Ground Four:  THE TRIAL COURT'S FAILURE TO GRANT A
MISTRIAL AFTER A VOID DIRE REVEALED THAT THE
JURORS MAY HAVE BEEN INFLUENCED BY FACTS NOT
IN EVIDENCE VIOLATED PETITIONER'S
CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND
IMPARTIAL JURY AS REQUIRED BY THE U.S. Const. amend.
VI.

Ground Five:  THE TRIAL COURT ERRED IN NOT
GRANTING PETITIONER'S REQUEST FOR A MISTRIAL
AFTER THE DEFENSE EXPERT, ON CROSS-EXAMINATION
MADE REFERENCE TO PETITIONER'S FAILURE TO
TESTIFY.

Ground Six:  DEFENDANT WAS DENIED THE EFFECTIVE
ASSISTANCE OF TRIAL COUNSEL IN THAT COUNSEL

4

FAILED TO PROPERLY INVESTIGATE, PREPARE FOR
TRIAL AND USED AN INEFFECTIVE INVESTIGATOR.

(Pet. ¶ 12, Addendum II.)

The State filed an Answer seeking dismissal of the Petition as a mixed petition and on the

merits, arguing that none of the grounds asserted satisfies the standard for habeas relief.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to

entertain a habeas petition challenging a state conviction or sentence only where the inmate's

custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A district court must give deference to determinations of state courts.  See Duncan v.

Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90

F.3d 87, 90 (3d Cir. 1996).  Federal courts "must presume that the factual findings of both state

trial and appellate courts are correct, a presumption that can only be overcome on the basis of

clear and convincing evidence to the contrary."  Stevens v. Delaware Correctional Center, 295

F.3d 361, 368 (3d Cir. 2002).

Where a federal claim was "adjudicated on the merits" [1] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.  Id. at 409-10.

---

[1] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001)).  A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  Rompilla, 355 F.3d at 247.

A court begins the analysis by determining the relevant clearly established law.  See

Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the

holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the

relevant state-court decision."  Williams, 529 U.S. at 412.   A court must look for "the governing

legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III.  DISCUSSION

A.  Instructions

In Ground One, Petitioner asserts that "the trial court erroneously instructed the jury on

imperfect self-defense and intoxication and failure to explain the law with [respect] to the facts

of the case, thereby denying defendant his right to a fair trial."  (Pet., Addendum II, Ground I.)

As factual support, Petitioner states that, although the trial court charged the jury on the

principles of imperfect self-defense and the lesser included offenses of aggravated and reckless

manslaughter, the instructions improperly failed to explain how imperfect self-defense mitigates

a murder to passion/provocation manslaughter.  In addition, he asserts that the trial judge

properly instructed the jury in regard to intoxication that "one's mental faculties must be so

prostrated as to deprive one of his will to act," but then improperly misstated the instruction,

charging the jury that "the condition where one's mental faculties are so prostrated as to deprive

one of his ability to act and his ability to reason."  (Id.)  Petitioner argues that the erroneous

charge "could have misled [the jury] into believing petitioner had to be in a coma before a

defense of intoxication was available to him."  (Id.)  The government argues that Ground One

involves state law and does not implicate the Constitution and, to the extent that it raises a

constitutional claim, due process does not require the claimed instructions.

"In conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S.

62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d

152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial

proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v.

Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, §

2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).  "[E]rrors of state

law cannot be repackaged as federal errors simply by citing the Due Process Clause." [2] Johnson

v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "it is well established that a state

court's misapplication of its own law does not generally raise a constitutional claim." Smith v.

_____

[2] In reviewing a § 2254 petition, a federal court is not permitted to address a federal
constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as
a ground for relief.  See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas
petition raised claim that the police had elicited petitioner's statements without satisfying
Miranda, the district court erred when it "went beyond the habeas petition and found the
statements [petitioner] made after receiving the Miranda warnings to be involuntary under due
process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains
ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is
not permitted to  consider ground, evident from the facts but not raised in the petition, that
appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by
appealing the conviction).  Nor may the Court recharacterize a ground asserted under state law
into a federal constitutional claim.  See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners
simply challenged the correctness of the self-defense instructions under state law, their petitions
alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d
110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion
of testimony violated his rights under state law, federal court may not consider ground, not set
forth in the petition, that exclusion of the testimony violated his federal due process rights).

Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it."  Id.  As the Third Circuit explained,

> In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses. Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements. See McMillan v. Pennsylvania, 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).

> It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state

9

> supreme courts for the purpose of determining whether jury
> instructions were correct understate law with respect to the
> elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

The federal Constitution does not require a jury to consider voluntary intoxication in determining whether the defendant purposely and knowingly caused the death of a person. See Montana v. Egelhoff, 518 U.S. 37 (1996); Goodwin v. Johnson, 132 F.3d 162, 191 (5th Cir. 1997). And "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71-72. Petitioner does not point to a federal requirement that jury instructions on the elements of an offense must include the particular provisions he seeks, nor does he show that the instructions deprived him of a defense which federal law provided to him. Id. at 111. Moreover, Petitioner cites no Supreme Court authority for the proposition that the jury instructions violated a clearly established federal right, as determined by the Supreme Court. He is therefore not entitled to habeas relief on Ground One.

## B.  Admission of Evidence

In Ground Two, Petitioner asserts that the admission of testimony of the victim's sister deprived him of a fair trial guaranteed by the Fourteenth Amendment. As factual support, Petitioner asserts that testimony concerning the victim's age, siblings, and how her family learned of the victim's death was irrelevant, highly prejudicial, and designed to arouse sympathy for the victim and her family.

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983). The admissibility of evidence is a question of state law which is not cognizable under

10

habeas review.  See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").  Because the admission of the testimony of the victim's sister was not contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief under Ground Two.

C.  Self-Incrimination

In Ground Three, Petitioner contends that the admission of his recorded and transcribed statement to the police violates his Fifth Amendment right not to be "compelled . . . to be a witness against himself."  U.S. Const. amend. V.  As factual support, Petitioner asserts that, "particularly in light of his mental deficiencies, these statements fail to satisfy the basic criterion of voluntariness, and were not the product of a valid waiver of his rights."  (Pet. Addendum II, Ground Three.)  In addition, Petitioner contends that the waiver of his rights was not voluntary because he had consumed drugs and alcohol on the night before he was questioned and because he regarded the interviewer as an authority figure whom he wanted to please.[3]

---

[3] Petitioner litigated the suppression of his statement in the Law Division and on appeal before the Appellate Division, but Petitioner did not include this claim either in his petition for certification on direct appeal or from denial of post conviction relief.  Although the claim is not exhausted, this Court will not dismiss the Petition as a mixed petition because neither this ground, nor the other unexhausted ground (Ground Five), presents a colorable federal claim.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,
(continued...)

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination.  See Malloy v. Hogan, 378 U.S. 1, 8 (1964).  In Miranda v. Arizona, 384 U.S. 436 (1966), the Court held that "without proper safeguards the process of in-custody interrogation . . . contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."  384 U.S. at 467.   When police ask questions of a suspect in custody without administering the required warnings, Miranda dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief.  See Oregon v. Elstad, 470 U.S. 298, 317 (1985).  Thus, a confession taken during a custodial interrogation without the provision of Miranda warnings violates the privilege against Self Incrimination.  See Thompson v. Keohane, 516 U.S. 99 (1995). "To safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the Miranda Court held, suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation."  Thompson, 516 U.S. at 107; see also Miranda, 384 U.S. at 479.

---

[3](...continued)
notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); Lambert v. Blackwell, 134 F.3d 506, 515 (3d Cir. 1997) (district court may deny an unexhausted petition on the merits under § 2254(b)(2) "if it is perfectly clear that the applicant does not raise even a colorable federal claim").

In Miranda, the Court noted that "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently."  Miranda, 384 U.S. at 444. The Court articulated the two-pronged test for waiver in Moran v. Burbine, 475 U.S. 412 (1986):

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Id. at 421 (citations and internal quotation marks omitted).

As the Third Circuit explained in a § 2254 case,

> This inquiry requires us to consider the totality of the circumstances surrounding the interrogation, which includes examining the events that occurred and the background, experience, and conduct of the defendant.  Miranda rights will be deemed waived only where the totality of the circumstances "reveal[s] both an uncoerced choice and the requisite level of comprehension."

Reinert v. Larkins, 379 F.3d 76, 88 (3d Cir. 2004) (quoting Moran, 475 U.S. at 421) (citations omitted).

The record here shows that the state trial judge concluded, after conducting a suppression hearing, that Petitioner's statement was given knowingly, intelligently and voluntarily, after he received and understood the Miranda warnings:

> THE COURT:  ... I think we can start this inquiry with the first hurdle of Jackson/Deno and that is were the Miranda warnings given.  And I assume that you do not dispute that . . .

MR. IGNATOFF (defense counsel):  No, I don't dispute the fact that they were given, nor do I dispute the fact that they were understood.

THE COURT:  Okay.  So the second hurdle was, you know, is did the defendant waive the rights under the totality of the circumstances.  Was the waiver knowing, intelligent and voluntary.  And I think that that is the gravamen of your argument that that waiver wasn't voluntary, intelligent and knowing or if it was knowing, it certainly wasn't voluntary and intelligently given and in a large part because of the testimony of your witness that in fact the defendant was still suffering from the effects of alcohol and drug use . . . And then I guess the third thing that the Court must address is was the statement voluntary as to satisfy the due process requirements, that is, was the statement the product of the defendant's free will.  Was he in fact coerced into that.  And I don't believe that your argument is that the police used unfair tactics in that . . .

MR. IGNATOFF:  . . . The argument is that given his particular disposition while, you know, the police are sitting there and granted, they're not psychologists, given him a battery of tests or any of those things, they may or may not recognize that he has somewhat limited intelligence and certainly, I wouldn't expect him to recognize that he had these other problems of which both sides agree, but it is still as applied to him.

THE COURT:  Could you present me with a case?  I know of no cases entirely on point, all four corners, but a case in which the Appellate Court of the Supreme Court kept out a confession that had some of the indicia of this particular case?

MR. IGNATOFF:  No.

THE COURT:  Because I have searched and I cannot find any either.  There's case law that holds that the level of mental disability that would render a suspect incapable of understanding his constitutional rights is probably close to the point where the suspect would be said to be incapable managing his affairs.  I mean you'd have to get down on that level and, yet, we have a defendant who apparently did manage his affairs.  I know somebody just in the last day, I guess one of the counsel I guess said that the defendant worked in the kitchen or was a dishwasher, but I heard

14

testimony from the officers the defendant served people, that he was a waiter there, so that he actually went after orders for food, served food.  Gave them bills and then he kept not only that job, but a job in construction for a period of time and that he managed his own affairs so that makes it difficult to reconcile the argument of the defendant that in fact his level of mental disability was such that he really couldn't understand it and I think your own witness Doctor Dougherty said that he questioned the defendant and the defendant said he did understand his . . . But, you know, we have people who drive under the influence of alcohol who waive their Miranda warnings and, again, I have looked at those cases unless they're falling down drunk, and they just stuck with their own name there, just doesn't seem to be any problem with them waiving their Miranda warnings, and in this case the only indicia of drunkenness appears to be given by the defendant one year after because Doctor Dougherty interviewed the defendant approximately one year after the event took place and the defendant said that he used the substances and was messed up and that is the sole basis that I can see on which the defense wishes me to find that the defendant was so inebriated or intoxicated either by drugs or alcohol that in fact he didn't know what he was doing.  It does not seem to be to reach the level where I can find that to admit this particular admission by the defendant would be a violation of  his due process rights in any way or would be unduly prejudicial to the defendant's right to be apprised of his constitutional rights . . .

(Stenographic Transcript of Decision on Motion to Suppress, Jan. 9, 1998, 13-8 to 17-25.)

The Appellate Division affirmed this ground without discussion, finding that the trial judge's findings were supported by sufficient evidence in the record.  State v. Lang, Docket No. A-5446-97T4 slip op. at 22.

This Court holds that the New Jersey courts' adjudication of Petitioner's claim that the waiver of Petitioner's rights to remain silent and to have an attorney present after receipt of Miranda warnings was not knowingly, intelligently and voluntarily made is not contrary to, or

involved an unreasonable application of the Supreme Court's holdings in <u>Miranda</u>, <u>Oregon v. Elstad</u>, and <u>Moran v. Burbine</u>.  Thus, Petitioner is not entitled to habeas relief on ground Three.

D.  Improper Juror Influence

Petitioner argues in Ground Four that jurors may have been influenced by facts not in evidence and that the failure to grant a mistrial on this basis violated his constitutional right to a fair trial and impartial jury.  As factual support, Petitioner states that, after the defense had rested, a juror advised the court that she worked at the Middlesex County Correctional Center, she had seen Petitioner's name on a housing sheet at the jail, she feared for her safety if Petitioner were to be convicted, and that she had expressed her concern to other jurors.  Petitioner contends that the potential for prejudice to the Petitioner from the communication of fear to the jurors violated his constitutional rights.

The Sixth Amendment provides:  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."  U.S. Const. amend. VI.  In <u>Irvin v. Dowd</u>, 366 U.S. 717 (1961), the Court vacated the Seventh Circuit's ruling in a § 2254 case on the ground that the jury was not impartial.

> It was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 (1807), "The theory of the law is that a juror who has formed an opinion cannot be impartial." <u>Reynolds v. united States</u>, 98 U.S. 145, 155, 25 L. Ed. 244.
>
> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.

16

>This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. <u>Spies v. People of State of Illinois</u>, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80; <u>Holt v. United States</u>, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; <u>Reynolds v. United States</u>, <u>supra</u>. . . . As stated in <u>Reynolds</u>, the test is "whether the nature and strength of the opinion formed are such as in law necessarily . . . raise the presumption of partiality.  The question thus presented is one of mixed law and fact . . . The affirmative of the issue is upon the challenger.  Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside . . . .  If a positive and decided opinion had been formed, he would have been incompetent even though it had not been expressed.

<u>Irvin</u>, 366 U.S. at 722-23.

In <u>Turner v. State of La.</u>, 379 U.S. 466, 471-73 (1965), two deputy sheriffs served dual roles as prosecution witnesses and jury custodians, and the jury was in close and continual association with the deputies, who ate with them, conversed with them, and did errands for them. The Court held that the prejudice inherent in that situation violated the defendant's due process right to a fair trial before an impartial jury.  As the Court explained,

>'In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors . . . . In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke a juror must be as 'indifferent as he stands unsworne.' Co.Litt. 155b. His verdict must be based upon the evidence developed at the trial. <u>Cf</u>. <u>Thompson v. City of Louisville</u>, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies . . . . The requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial

17

by jury . . . .  In the constitutional sense, trial by jury in a criminal
case necessarily implies at the very least that the 'evidence
developed' against a defendant shall come from the witness stand
in a public courtroom where there is full judicial protection of the
defendant's right of confrontation, of cross-examination, and of
counsel. What happened in this case operated to subvert these basic
guarantees of trial by jury.

Turner, 379 U.S. at 471-473 (footnote, citations and internal quotation marks omitted).

The Turner Court recognized the great prejudice inherent in the dual role of jury bailiff

and key prosecution witness:

It would have undermined the basic guarantees of trial by jury to
permit this kind of association between jurors and two key
prosecution witnesses who were not deputy sheriffs.  But the role
that Simmons and Rispone played as deputies made the association
even more prejudicial.  For the relationship was one which could
not but foster the jurors' confidence in those who were their
official guardians during the entire period of the trial.

Turner, 379 U.S. at 474.

In addition, the "intrusion" jurisprudence was summarized in Smith v. Phillips, 455 U.S.

209, 217 (1982):

[D]ue process does not require a new trial every time a juror has
been placed in a potentially compromising situation.  Were that the
rule, few trials wold be constitutionally acceptable . . . . [I]t is
virtually impossible to shield jurors from every contact or influence
that might theoretically affect their vote.  Due process means a jury
capable and willing to decide the case solely on the evidence
before it, and a trial judge ever watchful to prevent prejudicial
occurrences and to determine the effect of such occurrences when
they happen.

Id.

In this case, the Appellate Division rejected Petitioner's partial juror claim as follows:

> During the defense case, juror Pamela Brown asked to speak to the court.  With counsel present in chambers, Brown advised the court that she worked at the Middlesex County Adult Correctional Center and during the weekend she noticed defendant's name on a "housing sheet."  Brown said that although she could remain fair as a juror, she was concerned for her safety after the trial.  She also said "a few of the ladies know he is housed out there."

> The court and both counsel agreed that Brown should be excused and that the remaining jurors should be interviewed.

> The court then questioned each of the jurors individually and in chambers.  After questioning, the court found that only three jurors had discussed the matter with Ms. Brown.  Each had learned Ms. Brown was a guard at the Correctional Center and that defendant was incarcerated there.  None had learned of Ms. Brown's fear, and each indicated they could remain fair and impartial.  The three jurors indicated to the court that each assumed a defendant charged with murder would be incarcerated in an institution, regardless of whether Ms. Brown had informed them she worked at the place of his incarceration.  No juror learned or perceived that Ms. Brown was excused because of any fear of safety.

> At argument before us, defendant candidly acknowledged that no prejudice was perceived merely because three jurors had learned that defendant was incarcerated pending trial . . . , and none revealed either a fear of defendant or even a fear of him by Ms. Brown.

> The trial judge denied defendant's motion for a mistrial, saying:

>> I am satisfied beyond a reasonable doubt that these jurors have not been contaminated both by their expressions to me and also by the nature of the information that they know through the excused juror.  It was not unduly prejudicial information.  When one is charged with a serious crime such as murder it is not unusual for the average citizen to believe that that person is incarcerated somewhere, but in any event they have all expressed to me, as I said, it is not going to play any part in their

19

> deliberation so I am going to respectfully deny your
> motion for a mistrial.
>
> The trial judge did not abuse her discretion in denying the mistrial .
> . . Here the judge interviewed all jurors who spoke with Ms.
> Brown, learned what the jurors heard, and ascertained that they
> could remain fair and impartial . . .

State v. Lang, Docket No. A-5446-97T4 slip op. at 18-20 (citations omitted).

This Court finds that the adjudication of Petitioner's partial jury claim was not contrary to, or involved an unreasonable application of Irvin, Turner and Smith v. Phillips. Thus Petitioner is not entitled to habeas relief on Ground Four.

E.  Comment on Failure to Testify

In Ground Five, Petitioner argues that "the trial court erred in not granting Petitioner's request for a mistrial after the defense expert, on cross-examination, made reference to Petitioner's failure to testify."  (Pet. ¶ 12, Addendum III, Ground Five.)  In support of Ground Five, Petitioner asserts that the prosecutor asked Dr. Dougherty, a defense forensic psychologist, if he knew at which point in time Petitioner's knowing and purpose had stopped, and Dr. Dougherty answered, "There is only two people who can pinpoint the time exactly and one is sitting here in the courtroom."  Petitioner asserts that, although defense counsel did not object immediately, the next day counsel requested a mistrial on the ground that the statement infringed in Petitioner's constitutional right not to testify and it also decreased his defense of diminished capacity.  Petitioner states that the court denied the mistrial but gave a curative instruction. Petitioner maintains:  "The fact that the offending comment went to the heart of petitioner's defense and was not solicited by defense counsel, puts this case in that class of errors that requires this court to grant petitioner's petition for a writ of habeas corpus, especially since no

curative instruction could be fashioned to solve the problem that had been done." (Pet. ¶ 12, Addendum II, at p. 11.) [4]

As stated above, the Fifth Amendment prevents a person from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In <u>Griffin v. State of California</u>, 380 U.S. 609, 611 (1965), the defendant was convicted of first degree murder after the prosecution had stated in summation that the defendant was the only person who could provide information as to certain details relating to the murder and yet defendant had "'not seen fit to take the stand and deny or explain.'" The Supreme Court reversed the conviction on the ground that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." <u>Id.</u> at 615. "<u>Griffin</u> prohibits the judge and prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt." <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 319 (1976). The Third Circuit observed that "[a] remark is directed to a defendant's silence when 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure to testify.'" <u>United States v. Brennan</u>, 326 F.3d 176, 187 (3d Cir. 2003) (quoting <u>United States v. Chaney</u>, 446 F.2d 571, 576 (3d Cir. 1971)). "Statements regarding the 'absence of facts in the record[,]' however, 'need not be taken as comment on [a] defendant's failure to testify.'" <u>Brennan</u>, 326 F.3d at 187 (quoting <u>Bontempo v. Fenton</u>, 692 F.2d 954, 959 (3d Cir. 1982)); <u>see also</u> <u>United States v. Isaac</u>, 134 F.3d 199, 206-07 (3d Cir. 1998) (prosecutor did not violate Fifth Amendment by stating in summation that

---

[4] Although Petitioner did not present this claim to the New Jersey Supreme Court and the claim is not exhausted, this Court will nevertheless reach the merits. <u>See</u> <u>infra</u> note 3.

defendant "captained that boat from Jamaica, and the only people who would know that [defendant] captained that boat from Jamaica are [the defendant], Conrad Brown, Irvin Reid, and that fourth individual in Jamaica.  Those are the only people").

In this case, the Appellate Division rejected Petitioner's self-incrimination claim on direct appeal as follows:

> Defendant argues that his privilege against self-incrimination was infringed when his own witness, in an unsolicited comment during cross-examination, said that there are only two people who can pinpoint when defendant began acting with purpose and "one is sitting here in this courtroom."  Testifying on behalf of defendant, Dr. Dougherty, a psychiatrist, stated that defendant was not acting with purpose when he killed the victim because of his mental defect and drug and alcohol use . . .

> When the trial resumed six days later, defense counsel asked for a mistrial based on Dr. Dougherty's answer on grounds that it infringed defendant's privilege against self-incrimination.  The court denied the motion for mistrial, noting that the comment was "an oblique reference" which "went over the heads of most jurors," and did not deny defendant a fair trial.  Moreover, in its final jury instructions, the judge advised the jury that no inference was to be drawn from defendant's decision not to testify and that the State had the burden of proof.  Again, we find no abuse of discretion.

State v. Lang, Docket No. A-5446-97T4 slip op. at 20-22.

This Court finds that the adjudication of Petitioner's self-incrimination claim was not contrary to, or involved an unreasonable application of Griffin or other Supreme Court precedent. Thus, Petitioner is not entitled to habeas relief on Ground Five.

F.  Ineffective Assistance of Counsel

In Ground Six, Petitioner contends that he was denied the effective assistance of trial counsel, who "failed to properly investigate, prepare for trial and used an ineffective

22

investigator." (Pet. ¶ 12, Addendum II, Ground Six.)  As factual support, Petitioner complains that counsel failed to dismiss Pamela Brown as a juror during voir dire, failed to have Petitioner's blood tested for alcohol and drugs upon his arrest, failed to obtain a copy of the lab report, even though the police took a blood sample, and used an investigator who prepared an inaccurate report regarding a potential defense witness.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Id. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id.  Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In this case, Petitioner presented his ineffective assistance of counsel claims in his state

petition for post conviction relief.  The Appellate Division rejected the claims and affirmed the

order denying post conviction relief as follows:

> [D]efendant argues that his attorney failed to adequately investigate
> defendant's use of anabolic steroids at the time of the offense and
> further failed to adequately investigate defendant's alcohol and
> cocaine consumption to support the claim that defendant lacked the
> capacity to act purposely or knowingly.  Nothing was submitted
> below that might demonstrate that the noted areas of investigation
> would have been fruitful.  Moreover, at the trial defense counsel
> called an expert in forensic psychology and a clinical psychologist
> for the purpose of showing that defendant lacked the requisite
> mental capacity required for conviction of murder . . . .
>
>    Finally, under Point I, defendant argues that his trial attorney was
> ineffective in permitting a corrections officer to sit as a juror
> because, according to defendant, corrections officers are biased
> against defendants.  Needless to say, the record was bereft of any
> evidence in support of that contention.  Since defendant failed to
> make out a prima facie case of ineffectiveness, the judge correctly
> denied his request of a testimonial hearing.

State v. Lang, Docket No. A-2045-02T4 slip op. at 2-3.

Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel

claims because he has not shown that the adjudication of the claim by the New Jersey courts  was

contrary to, or involved an unreasonable application of, Strickland.

G.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a

substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See

Miller-El v. Cockrell, 537 U.S. 322 (2003).

24

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).


/s/ Jose L. Linares_____
DATED: September 5, 2006                    UNITED STATES DISTRICT JUDGE

25